IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

KRISTEN A. REYNOLDS,

    Plaintiff,

v.

AFFIRM, INC.,

    Defendant.

Case No.

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff Kristen A. Reynolds, an identity theft victim, by and through counsel, brings this action for damages against the Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.*, on an individual basis, against Defendant Affirm, Inc. ("Affirm"), and states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

3. Plaintiff is a natural person residing in Mathews, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

4. Affirm is a corporation with its headquarters located at 650 California Street, 12th Floor, San Francisco, CA 94108, and is authorized to conduct business in the State of North

Carolina, including within this District. Affirm is a "Furnisher" as defined in 12 CFR 1022.41.

## FACTUAL ALLEGATIONS

5. Plaintiff is active reserves of the Marine Corps. Plaintiff is a firefighter.

6. In or around September 2023, Plaintiff applied for a home loan and anticipated qualifying for favorable terms based on her historically positive credit.

7. To her shock, Plaintiff was informed that her credit score was too low to qualify for the program she had applied for.

8. Concerned, Plaintiff immediately requested copies of her consumer reports and discovered information and accounts that she did not recognize and had not opened.

9. Specifically, there were six (6) accounts (the "Fraudulent Accounts") published to her consumer reports that did not belong to Plaintiff:

    i. Account name: MoneyLion Inc
       Account number: LLI4380XXX
       Balance: $76
       Date Opened: 01/24/2022
       Account Status: Account charged off. $439 written off. $76 past due as of Nov 2024.

    ii. Account name: Credence Resource Management
       Account number: 277472XXX
       Balance: $368
       Date Opened: 07/25/2024
       Account Status: Collection account. $368 past due as of Dec 2024.
       Original Creditor: Cox Communications Inc

    iii. Account name: Westbon, Inc
       Account number: 6590XX
       Balance: $0
       Date Opened: 01/01/2022
       Account Status: Account charged off. $69 written off.

    iv. Account name: Affirm Inc
       Account number: A25XXXXX
       Balance: $429
       Date Opened: 12/02/2021

                                Account Status: Account charged off. $429 written off. $429 past due as of Dec 2024.

                v. Account name: Affirm Inc
Account number: NJCQXXXX
Balance: $751
Date Opened: 12/13/2021
Account Status: Account charged off. $751 written off. $751 past due as of Dec 2024.

               vi. Account name: Affirm Inc
Account number: VEVCXXXX
Balance: $289
Date Opened: 12/02/2021
Account Status: Account charged off. $289 written off. $289 past due as of Dec 2024

10. Upon information and belief, the email address used for these accounts did not belong to Plaintiff.

11. Based on the inaccurate email addresses, address and telephone numbers, and the false accounts, Plaintiff realized that she had become a victim of identity theft while on active duty in the Marines.

12. In or around September 2023, Plaintiff contacted Defendant Affirm, reporting the identity theft and requesting information to help her identify the individual that opened the Fraudulent Accounts.

13. Despite Plaintiff's efforts, the Affirm accounts remained on her reports.

14. In or around January 6, 2025, Plaintiff visited the Charlotte-Mecklenburg Police Department and filed a police report.

15. On or about January 15, 2025, Plaintiff completed and submitted an Identity Theft Report with the Federal Trade Commission ("FTC"), listing multiple fraudulent accounts.

16. Concerned that the furnishers at issue, including Defendant Affirm, would continue to report inaccurately to one or more consumer reporting agencies that Plaintiff was responsible

for the Fraudulent Accounts, Plaintiff determined that she needed to escalate the issue to prevent further damage to her credit files and consumer reports.

17. On or about January 19, 2025, Plaintiff disputed the Fraudulent Accounts with non-parties Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax") and Trans Union LLC ("Trans Union").

18. Specifically, Plaintiff disputed that the Fraudulent Accounts were not hers, but rather, the product of fraud and identity theft.

19. Plaintiff provided her current mailing address, social security number, date of birth, and phone number.

20. Plaintiff also enclosed a copy of the Charlotte-Mecklenburg Police Report and the FTC Report.

21. Plaintiff provided sufficient information to identify her credit file and sufficient information to support her dispute.

22. Plaintiff requested that the identity theft information be blocked from her credit file.

23. On February 11, 2025, Experian issued a letter to Plaintiff in response to Plaintiff's January 19, 2025, dispute.

24. Upon information and belief, Experian sent Defendant Affirm an automated credit dispute verification ("ACDV") pursuant to January 19, 2025, Plaintiff's dispute to Experian.

25. Upon information and belief, Defendant Affirm received Experian's ACDV and did not adequately investigate Plaintiff's dispute.

26. Instead, Affirm told Experian to "verify" the Affirm accounts, which Experian did.

27. Therefore, Affirm and Experian failed to delete the Fraudulent Accounts from Plaintiff's Experian report.

28. Upon information and belief, Defendant Affirm failed to adequately review all of the information provided to it by Plaintiff in connection with the dispute.

29. Affirm also failed to review other relevant information it already had on file.

30. On or about February 11, 2025, Plaintiff pulled her updated Experian Credit Report.

31. On that report, Plaintiff noticed that Experian blocked the fraudulent MoneyLion, Westbon, and Credence Resource Management accounts but had not removed the three fraudulent Affirm accounts.

32. The Experian report displayed as such because Affirm's policies and procedures were utterly lacking (compared to those of MoneyLion, Westbon, and Credit Resource Management) and noncompliant with the FCRA.

33. Trans Union and Equifax also, upon information and belief defying Affirm's ACDV response, deleted the Fraudulent Accounts.

34. Thus, Affirm's policies and procedures were utterly lacking compared with those of MoneyLion, Westbon, Credit Resource Management, Trans Union, *and* Equifax.

35. Affirm's policies and procedures apparently lacked specific, industry-standard protections that MoneyLion, Westbon, Credit Resource Management, Trans Union, and Equifax did in fact have in place.

36. Upset that Affirm did not remove the three Fraudulent Affirm Accounts, and that the continued reporting would cause additional adverse action by her existing and potential creditors, Plaintiff determined that she needed to dispute the Fraudulent Accounts again.

37. On or about February 13, 2025, Plaintiff again disputed the Fraudulent Accounts with Experian. Specifically, Plaintiff disputed that the Fraudulent Accounts were not hers, but rather the product of fraud and identity theft.

38. Plaintiff enclosed a copy of the February 5, 2025, e-mail that she received from Experian and asked that Experian remove the three remaining fraudulent accounts.

39. Plaintiff once again provided her current mailing address, email address, social security number, date of birth, and phone number.

40. Plaintiff again also enclosed a copy of the Charlotte-Mecklenburg Police Report and the FTC Report.

41. Plaintiff provided sufficient information to identify her credit file and sufficient information to support her dispute.

42. Plaintiff requested that the identity theft information be blocked from her credit file.

43. But in response to Plaintiff's February 13, 2025 dispute, on or about February 25, 2025, Experian sent an email to Plaintiff dismissing her dispute without investigation.

44. Irritated, frustrated, and irate, and still concerned that eventually someone might seek to collect the exorbitant balance from her and that the continued reporting would cause additional adverse action by her existing or potential creditors, Plaintiff determined that she needed to dispute the Fraudulent Accounts again.

45. On or about March 12, 2025, Plaintiff again disputed the Fraudulent Accounts with Experian. Specifically, Plaintiff disputed that the Fraudulent Accounts were not hers, but rather the product of fraud and identity theft.

46. Plaintiff once again provided her current mailing address, email address, social security number, date of birth, and phone number.

47. Plaintiff again also enclosed a copy of the Charlotte-Mecklenburg Police Report and the FTC Report.

48. Plaintiff provided sufficient information to identify her credit file and sufficient

information to support her dispute.

49. Plaintiff requested that the identity theft information be blocked from her credit file.

50. Upon information and belief, Experian sent Defendant Affirm an automated credit dispute verification ("ACDV") pursuant to Plaintiff's subsequent dispute to Experian.

51. Upon information and belief, Defendant Affirm received Experian's ACDV and did not adequately investigate Plaintiff's dispute.

52. Instead, Affirm told Experian to "verify" the Affirm accounts, which Experian did.

53. Therefore, Affirm and Experian failed to delete the Fraudulent Accounts from Plaintiff's Experian report.

54. Upon information and belief, Defendant Affirm failed to adequately review all of the information provided to it by Plaintiff in connection with the dispute.

55. Affirm also failed to review other relevant information it already had on file.

## PLAINTIFF'S DAMAGES

56. Due to Defendant's ardent refusal to comply with its obligations pursuant to the FCRA, Plaintiff was forced to take the time and expense of filing repeated disputes, going so far as to obtain legal advice and counsel.

57. Further, and due to Defendant's inexplicable refusal to remove the Fraudulent Accounts from an identity theft victim's credit file, Plaintiff expended countless hours disputing the same, to no avail.

58. Defendant's conduct disrupted Plaintiff's life.

59. In addition to impacting on her work productivity and income, dealing with the consequences of Defendant's conduct has taken Plaintiff away from time she would otherwise have spent with her friends and family. This has taken a toll on Plaintiff.

60. Defendant's conduct has caused Plaintiff extreme and ongoing stress and anxiety.

Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendant would ever properly reinvestigate her disputes.

61. Further, the Fraudulent Accounts have negatively impacted and depressed Plaintiff's credit score.

62. Plaintiff is distressed by the fact that the fraudulent information has been shared with third parties and potential creditors, including but not necessarily limited to Capital One in March 2025.

63. At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

64. At all times pertinent hereto, the conduct of Defendant, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

65. Defendant has had years of notice in the form of federal lawsuits similar to this one, but despite it all, Defendant has not taken any better steps to protect the Plaintiff here.

66. Defendant is aware of the shortcomings of its procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Defendant's violations of the FCRA are willful.

67. As a result of the Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Accounts which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Accounts

which were the product of identity theft.

68. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by the Defendants.

## COUNT I

### 15 U.S.C. § 1681s-2b
### Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer

69. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

70. Defendant Affirm caused the Fraudulent Accounts to be added to Plaintiff's credit file with the national credit bureaus, including but not limited to Experian. Those accounts were the product of identity theft.

71. Defendant Affirm violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the Defendant; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the Defendant.

72. As a result of Defendant Affirm's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating;

detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Accounts which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Accounts which were the product of identity theft.

73. Defendant Affirm's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant Affirm was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

74. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Affirm in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

(a) WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendant: Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681;

(b) An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, *et seq.;*

(c) An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: May 29, 2025                    Respectfully Submitted,

**Kristen A. Reynolds,**

By: <u>*Leonard A. Bennett*</u>
Leonard A. Bennett, NCSB #21576
Mark C. Leffler, *pro hac vice forthcoming*
Adam W. Short, *pro hac vice forthcoming*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com
Email: mark@clalegal.com
Email: adam@clalegal.com

*Attorneys for Plaintiff,*